Filed 9/3/24  P. v. Vidrio CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JOSE VIDRIO,<br><br>　　　Defendant and Appellant. | B326796<br><br>(Los Angeles County<br>Super. Ct. No. BA138861) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

　　　Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jose Vidrio was convicted of second degree murder in 1997.  Vidrio now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1]  The trial court concluded the jury did not impute malice to convict Vidrio of second degree murder.  Vidrio contends the trial court erred because the jury could have found him guilty under the natural and probable consequences doctrine.  We affirm the order denying Vidrio's petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Underlying Crime*

We take our statement of the facts underlying Vidrio's crime from the Court of Appeal opinion affirming the judgment of conviction.  (*People v. Vidrio* (Nov. 24, 1999, B119665) [nonpub. opn.] (*Vidrio*).)[2]

"At approximately 11 p.m. on September 26, 1996, Michael Blumberg was outside the Panama Hotel, near the intersection of

---

[1]    All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the law as section 1172.6 for the remainder of this opinion.

[2]    We refer to the Court of Appeal opinion affirming the judgment of Vidrio's conviction only "for background purposes and to provide context for the parties' arguments."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.)  We do not rely on the facts in *Vidrio* to review the trial court's determination of his eligibility for resentencing at the prima facie stage.  (*Id.* at p. 988.)

Fifth and Wall Street in downtown Los Angeles. Using a pair of homemade nunchaks, Blumberg was trying to fight off appellant and Francisco Toledo.

"Jimmy Buie, the security guard for the hotel, saw the altercation. He asked the three men to move away from the hotel. Appellant and Toledo started to walk in one direction. Blumberg started to walk in the opposite direction.

"Appellant and Toledo then turned around and ran towards and attacked Blumberg. At one point, Blumberg lost his balance and fell to the ground. Toledo grabbed Blumberg and punched him. As Toledo held Blumberg, appellant used a knife to repeatedly stab Blumberg. Blumberg fell to the ground. Appellant continued to stab Blumberg. Toledo kicked the fallen man.[3]

"Appellant and Toledo ran to a nearby hotel. Blumberg staggered to a nearby police station. Blumberg told a police sergeant that 'Cholos stabbed me.' Blumberg died early the next morning. Blumberg's wounds were consistent with the knife found in appellant's pocket.

"*Defense.*

"Appellant testified on his own behalf to the following. He had consumed a few beers that night and was 'somewhat' but not 'totally' drunk. He saw Toledo and Blumberg arguing and fighting. Blumberg hit Toledo with the nunchaks. Appellant tried to stop the fight because '. . . it didn't seem right . . . that it should be such an uneven fight.' Appellant told Blumberg to stop

---

[3] The jury ultimately convicted Toledo of assault with a deadly weapon. In closing argument, the prosecutor contended circumstantial evidence indicated Toledo had also used a knife during the altercation.

hitting Toledo. Blumberg said something like, 'Would you like some too?' Blumberg struck appellant with the nunchaks. Buie broke up the fight. Appellant and Toledo started to walk away. Blumberg said something like, 'When the guard goes inside, you'll see. You'll get it.' Appellant was scared and dizzy. He and Toledo returned. Appellant felt he 'had to do everything' and had to 'go all the way because as soon as the guard went back in[, Blumberg] was going to use the nunchaks' against him and Toledo. The three fought. Blumberg hit him with the nunchaks. Appellant used the knife because he was desperate. '[H]e couldn't figure out a way to get [Blumberg] away from [him].' 'Everything happened in a flash.' " Blumberg died from his injuries.

### Trial, Verdict, and Sentencing

The People charged Vidrio and Toledo each with one count of murder. (§ 187, subd. (a).) The information alleged that Vidrio personally used a deadly and dangerous weapon (a knife) in the commission of the crime. (§ 12022, subd. (b).)

In November 1997, Vidrio and Toledo were jointly tried. Vidrio testified that he stabbed Blumberg in self-defense. In her closing argument, the prosecutor argued both Vidrio and Toledo were guilty of murder and that both acted with either express or implied malice. Vidrio's counsel, in closing, conceded that the facts about Vidrio's involvement were undisputed: "Mr. Vidrio told you he stabbed Mr. Blumberg. It's not in dispute. There are no questions of identification. A stabbing occurred. Quite unfortunately Mr. Blumberg is now deceased. It is not in dispute." Counsel instead argued the "undisputed facts" proved Vidrio acted only with the intent to "defend himself from the imminent threat as well as defend Mr. Toledo."

4

After the jury retired for deliberations, the court asked counsel whether it should instruct the jury with CALJIC No. 3.02, which "talks about aiding and abetting where the intended crime is one, but the natural and probable consequences are another." The court further explained, "I have never heard any argument that the intended crime was the assault. So it may not be appropriate, but if there is any interest in having me give that instruction based on the way the arguments have gone . . . ." Toledo's counsel objected to the instruction. The court acknowledged: "You [Toledo] are the one who would be affected." The court decided not to instruct the jury under CALJIC No. 3.02 unless "it turns out that's where [the jurors] are going . . . ." Subsequently, the jury submitted a question to the court: "If we find one defendant guilty of one crime, can we find the other defendant guilty of aiding and abetting a crime of a greater or lesser degree?" In response to the jury's question, the trial court instructed the jury with CALJIC No. 3.02.[4]

---

[4] CALJIC No. 3.02, as given, stated: "One who aids and abets another in a commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted. [¶] In order to find the defendant guilty of the crime of murder as charged in Count I as an aider and abettor, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of an assault with intent to commit great bodily injury was committed; [¶] 2. That the defendant, this aider and abettor defendant, aided and abetted that crime; [¶] 3. That a co-principal of that crime committed the crime of murder or manslaughter; and [¶] 4. That the crime of murder or manslaughter was a natural and probable consequence of the commission of the crime of assault with intent to commit great bodily injury."

5

The jury convicted Vidrio of second degree murder. The jury further found true that Vidrio personally used a knife in the commission of the crime. The jury found Toledo not guilty of murder and convicted him of the lesser included offense of assault with a deadly weapon. (§ 245, subd. (a)(1).) The court sentenced Vidrio to 16 years to life for the murder and the section 12022 enhancement.

### Resentencing Proceedings

In August 2022, Vidrio filed a petition for resentencing under section 1172.6. The trial court appointed counsel. The People filed an opposition, and Vidrio filed a reply through counsel.

In November 2022, the court held a hearing and denied Vidrio's petition. The court found Vidrio failed to make a prima facie showing of eligibility because the record did not contain any jury instructions permitting the jury to impute malice to Vidrio to reach its verdict. Vidrio timely appealed.

## DISCUSSION

### I. Senate Bill No. 1437 and Section 1172.6

In 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as

6

stated in section 189, subdivision (e), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The amendments to the Penal Code did not invalidate murder convictions based on the theory that the defendant was the actual killer. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166, review granted May 1, 2024, S284232; *People v. Garcia* (2022) 82 Cal.App.5th 956, 967 [Senate Bill No. 1437 imposed heightened mens rea requirement only for persons who were not actual killers].)

Senate Bill No. 1437 created a procedure, now codified at section 1172.6, in which persons convicted of qualifying offenses under the former law may seek resentencing if they could no longer be convicted of those offenses under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant must file a petition declaring that, among other things, the defendant could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause. "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

## II. Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

7

"While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  Courts may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]" (*Id*. at p. 972.)  Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56 (*Harden*) [considering jury instructions and verdicts in prima facie stage analysis]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].)  The court may make credibility determinations adverse to a petitioner only if the record of conviction " ' "contain[s] facts refuting the allegations made in the petition" . . . .'  [Citation.]" (*Lewis*, at p. 971.)

As relevant here, a petitioner fails to make a prima facie showing for relief "if the record of conviction conclusively establishes . . . that . . . the petitioner was the actual killer, or . . . the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which appellate courts review de novo.  (*Ervin*, *supra*, 72 Cal.App.5th at p. 101.)

**III. The Trial Court Correctly Determined that the Jury Found Vidrio Guilty of Second Degree Murder Under a Currently Valid Theory**

Vidrio contends that the trial court erred in denying his petition because, under CALJIC No. 3.02, the jury could have convicted him as an aider and abettor of second degree murder under the natural and probable consequences doctrine. We disagree.

**A. The jury instructions and verdicts show the jury found Vidrio was the actual killer**

The record of conviction conclusively established that the jury, by finding true that Vidrio personally used a knife in the commission of second degree murder, convicted Vidrio as the actual killer. The People charged only Vidrio and Toledo in the victim's murder. It was undisputed at trial that Vidrio stabbed the victim. The jury convicted Vidrio of the victim's murder and found that he personally used a knife in the commission of the crime. Taken together, the jury's verdict necessarily reflects the factual finding that Vidrio was the assailant who stabbed the victim and therefore "personally committed the homicidal act." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88; see, e.g., *Harden, supra*, 81 Cal.App.5th at p. 55 ["when viewing the verdicts as a whole," jury's findings that defendant was guilty of murder and personally inflicted great bodily injury meant jury found she was the actual killer of victim who had been strangled].)

Once the jury found Vidrio personally used a knife in the commission of the murder, the natural and probable consequences theory became inapplicable. (*People v. Morales* (2024) 102 Cal.App.5th 1120, 1132–1133 [natural and probable consequences theory inapplicable to attempted murder conviction

9

once jury found true that defendant personally discharged a firearm and was the actual shooter].) On this basis alone, Vidrio is ineligible for resentencing relief as a matter of law.

Vidrio contends that the jury's true finding regarding the knife does not preclude his entitlement to resentencing relief because it "is a determination that appellant used a knife: it is not a determination that he killed the victim with the knife." To the extent Vidrio is arguing this finding does not establish he was the actual killer, this argument also fails. As explained above, the verdicts necessarily reflect the factual finding that Vidrio was convicted as the actual killer. Toledo's possible role in stabbing the victim does not alter this conclusion. Assuming the jury believed Toledo also stabbed the victim, it only found Vidrio guilty of murder. The jury's finding that Vidrio was guilty of murder, and that Toledo was guilty only of assault with a deadly weapon, together foreclose the possibility that the jury concluded Vidrio personally used a knife but was not the actual killer. Moreover, that Vidrio did not act alone does not preclude the jury's finding that he was the actual killer; his personal involvement in the killing, even as a concurrent cause of the victim's death, is sufficient. (See, e.g., *People v. Pock* (1993) 19 Cal.App.4th 1263, 1274–1276 [jury was properly instructed that defendant could be actual killer where he fired shots at victim but "there was some doubt as to whether appellant fired the actual fatal shot"].)

B. **The jury instructions show the jury found Vidrio personally acted with malice**

The record of conviction also irrefutably demonstrates that the jury convicted Vidrio of murder based on a finding that he personally harbored malice. Although the trial court instructed

10

the jury on the natural and probable consequences doctrine under CALJIC No. 3.02, the jury's verdicts exclude the possibility that the jury relied on this theory to convict Vidrio of murder. For aiding and abetting liability to attach to Vidrio under CALJIC No. 3.02, the jury would have needed to find that Vidrio aided and abetted an assault and "[t]hat a co-principal in [the assault] committed the crime of murder or manslaughter . . . ." But the jury convicted Toledo, the only other person alleged to be involved in the underlying crime, of committing assault. CALJIC No. 3.02 therefore did not permit the jury to convict Vidrio of second degree murder using the natural and probable consequences theory.

Nor did any remaining instructions permit the jury to impute malice to Vidrio to convict him of murder. The court instructed the jury with CALJIC No. 8.11, which defined express and implied malice; CALJIC No. 8.30, which defined second degree express malice murder; and CALJIC No. 8.31, which defined second degree implied malice murder. In response to a juror's question about the requisite intent for second degree murder,[5] the court further clarified that the jury could convict either defendant of murder by finding "express malice, the intent to kill, but no premeditation," or by finding "implied malice which does not require an intent to kill . . . ." The trial court did not instruct on any other theory of imputed malice. Thus, the jury's verdict necessarily reflects its factual finding that Vidrio personally harbored either express or implied malice in the commission of second degree murder.

---

[5] Specifically, a juror asked, "If we find that a defendant had intent to commit serious bodily harm and no intent to kill can we still find that defendant guilty of 2nd degree murder[?]"

11

## DISPOSITION

The order denying the petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

12